Snell *v.* Loucks

[SARATOGA GENERAL TERM, January 5, 1852. *Willard, Hand, Cady* and *C. L. Allen,* Justices.]

(*a*) See remarks of Gridley, J. in *Hayes* v. *Symonds,* (9 *Barb. S. C, Rep.* 270.)

———————◆———————

## SNELL *vs.* LOUCKS and others.

For the error of the judge at the circuit, in excluding or admitting evidence, on the trial of an issue ordered by the special or general term, to settle a disputed fact, arising on a motion, the remedy of the party aggrieved, is by a motion to the general term for a new trial of the issue, upon a case.

*It seems* that a bill of exceptions and appeal to the general term, under the code of 1851, were not appropriate remedies.

The former practice on feigned issues examined by WILLARD, P. J. in delivering the opinion of the court,

AT the special term of this court, held before Justice Cady, at Fonda, on the 25th day of November, 1850, a motion was made for a perpetual stay of the execution in this cause, and for an order compelling the plaintiff to acknowledge satisfaction thereon, upon the ground that the same had been fully paid and satisfied. On the part of the plaintiff it was admitted that certain payments had been made, either to the plaintiff or Hiram Riggs, his attorney, and which were credited on the execution. The point in dispute between the parties was as to a payment said to have been made to the plaintiff's attorney on the 13th

November, 1849. The defendants contended that that payment was $1200, while the plaintiff denied that it was for a larger sum than two hundred dollars. The defendants produced a receipt purporting to have been given, and which was in fact given by Hiram Riggs, the plaintiff's attorney, dated 13th November, 1849, for twelve hundred dollars. The word twelve in the body of the receipt, had been obviously altered from *two* to *twelve*, but whether such alteration was made before the receipt was delivered to Mr. Snell by Mr. Riggs, was a matter of dispute. Mr. Riggs' office was burnt, and all its contents, on the 25th December, 1849, and he departed this life on the 11th June, 1850, and before the present dispute arose.

Mr. Justice Cady declined deciding the motion upon the affidavits, but ordered an issue to be framed and tried at the Montgomery circuit, and that the jury be required to answer separately whether the defendants in this cause were indebted to the plaintiff upon the judgment in this cause to any amount, and if so, what amount remained due to the plaintiff thereon.

The issue was tried at the Montgomery circuit in June last, before Justice Willard and a jury. On that trial the plaintiff gave in evidence the judgment record in this cause, whereby it appeared that the plaintiff had recovered a judgment against the defendants for $1645,69, on the 9th December, 1848, and he admitted the receipt of sundry payments about which there was no dispute. The defendants' counsel thereupon offered in evidence the altered receipt of Nov. 13, 1848, but it was objected to, unless the defendant would show that the alteration of the receipt was made before it was delivered, or otherwise explain the alteration. Evidence was given on that subject, but the judge held that it was not satisfactory, and excluded it, and there being no other evidence of payment, he directed a verdict for the plaintiff, for the amount of the judgment and interest, deducting the payments about which there was no controversy, being $1113,97. A bill of exceptions was sealed by the judge, and an appeal was taken to the general term, and the cause was place ' upon the calendar.

A motion was made by the plaintiff's attorney at the last gen-

eral term to strike the cause from the calendar, and to dismiss the appeal, on the ground that the decision of the judge at the circuit could not be reviewed in this way; and further on the ground, that if it could be so reviewed, the appellant should give bail to prosecute the appeal. The court held the motion under advisement till this term.

*A. H. Ayres*, for the plaintiff.

*T. B. Mitchell*, for the defendants.

*By the Court*, WILLARD, P. J. This appeal having been taken on the 21st August last, is governed by the existing code of 1851. There can be no appeal under the code, to the general term, except from a *judgment* entered upon the report of referees, on the direction of a single judge of the same court; (*Code*, § 348,) or from an *order* made at a special term, or by a single judge of the same court, or a county judge. (*Id.* 349.) There was neither a *judgment* nor an *order* in this case, but merely the finding of a jury. The issue tried in this case was a substitute for a feigned issue under the former practice. (*Code*, § 73.) It was not a civil action. (*Id.* § 2.) The code is entirely silent as to the remedy for an erroneous decision made by the judge on the trial of such an issue. The court, therefore, in seeking a remedy, must resort to the ancient practice, and after finding an appropriate remedy, adapt it to the present organization of the courts and the analogies of the code.

Under the former practice, a feigned issue was sometimes awarded by the court of chancery, and sometimes by the supreme court. When it was directed by the court of chancery, if the party against whom the issue was found, was dissatisfied with the verdict, the application for a new trial might be made either to the court of law in which the issue was tried, or to the court which directed it. (*Tidd's Pr.* 805. 1 *Arch. Pr.* 317. *Graham's Pr.* 2d ed. 295, 497.) In *Doe* v. *Roe*, (1 *John. Cas.* 402,) a new trial was granted by the supreme court, on a feigned issue out of chancery, on the ground of newly discovered

evidence. In *Doe* v. *Roe*, (1 *John Cas.* 25,) an application was made to this court and entertained, for a new trial, on an issue ordered out of chancery to try the fact of adultery, on the ground of the excluding of evidence improperly. In *Den* v. *Fenn*, (1 *Caines' Rep.* 487,) it was held that relief must be sought in this court to set aside an inquest, improperly taken at the circuit, on an issue ordered out of chancery.

The English practice, it is believed, gave a preference to the motion for a new trial in the court which ordered the issue. The object of the feigned issue being to satisfy the conscience of the court, chancery will sometimes award a new trial in cases in which a court of law could not interfere, and will sometimes deny it, though improper evidence has been received. In *Lord Faulconberg* v. *Pierce*, (*Ambler*, 210,) Lord Hardwick granted a new trial, on the certificate of the judge that the verdict was against the *weight* of evidence ; a cause for which a court of law would not grant a new trial. And in *Cleve* v. *Gascoigne*, (*Id.* 323,) his lordship granted a new trial for the misdirection of the judge. In *Bowker* v. *Nixon*, (6 *Taunt.* 444,) an application was made in the common pleas for a new trial of an issue ordered out of chancery, on the ground of the improper rejection of evidence by the judge who presided at the trial. It was insisted that for an error of the judge, the motion should be made in the court of law, though it was conceded that for an error of the jury it might be made in the court which ordered the issue. But the court disregarded the distinction, and said that the application must in all cases be made in the first instance, to the court of chancery. Although there may have been improper decisions by the judge, still if on the whole, it appears that justice has been done, the court will not interfere. (*Pemberton* v. *Pemberton*, 11 *Ves. jun.* 51, 52, 53.)

In this state the modern practice has leaned towards having the motion for a new trial made to the court which ordered the issue. Thus in *Doe* v. *Doe*, (1 *Cowen*, 216,) it was held that a motion for a new trial in a feigned issue to try the question of adultery should be made in the court of chancery. This case was partly decided on the phraseology of the statute, (2 *R. L. of* 1813, *pp.*

197, 8, § 2,) and which is retained in the revised statutes. (2 *R. S.* 145, § 40.) But on a feigned issue to try the validity of a will, offered for proof before the surrogate, it is expressly provided that a new trial may be granted by the supreme court. (2 *R. S.* 67, § 58.) This subject was well examined by McCoun, vice chancellor, in *Mulock* v. *Mulock*, (1 *Edw. Ch. Rep.* 14, 18.) The learned vice chancellor observed, that it was well understood that the rules which formerly governed courts of law in granting new trials, upon the ground of testimony improperly admitted or rejected, have not been adopted by the court of chancery. Even courts of law have latterly undertaken to judge for themselves of the materiality of the evidence found to have been improperly admitted or rejected; and when they have been satisfied, that no injustice has been done, and the verdict would have been the same with or without such evidence, they have refused to grant a new trial. (*Lord Teynham* v. *Tyler*, 6 *Bing.* 561.) The object of a feigned issue is to satisfy the conscience of the court upon the matters of fact; and the object is attained when the conscience of the judge is satisfied that, at the trial, justice has been substantially done. In *Barker* v. *Ray*, (2 *Russ. R.* 63.) Lord Eldon says, this court in granting or refusing new trials proceeds upon very different principles from those of a court of law; and that it has been ruled over and over again, that if on the trial of an issue a judge reject evidence which ought to have been received, or receive evidence which ought to have been rejected, although in that case a court of law would grant a new trial, yet if this court is satisfied the verdict ought not to have been different, it will not grant a new trial upon such grounds. In *Booth* v. *Blundell*, (19 *Ves.* 503,) and *Hampson* v. *Hampson*, (1 *V. & B.* 41,) the same principles are recognized. Chancellor Walworth adopted the same doctrine in *Apthorp* v. *Comstock*, (2 *Paige*, 482.) He said in that case, which was an issue to try the genuineness of a deed, that the application for a new trial must be made in the court of chancery when that court had awarded the feigned issue; and he says that that court will not grant a new trial merely on the ground that the judge received

improper evidence on the trial of the issue, or that he rejected that which was proper, if on the whole circumstances, the chancellor is satisfied the result ought not to have been different, had such testimony been rejected in the one case, or received in the other. (*See also Head* v. *Head*, 1 *Sim. & Stu.* 150; *Turn. & Russ. R.* 142, *S. C. to the like effect.*)

Such was the practice in this state on this subject until the act of April 18, 1838, (*Laws of* 1838, *p.* 244,) entitled " An act to regulate the trial by jury, and the taking of testimony in chancery." That act, amongst other things, required issues to be framed in order to ascertain the disputed facts in suits in chancery, and directed the issues to be sent down for trial to any circuit court, superior or county court, and made the finding of the jury conclusive, unless a new trial was granted by the court in which the issue or issues were tried. The case of *Griffith* v. *Griffith*, (9 *Paige*, 216,) arose under that act. The act was found to be so defective and inconvenient in practice, that it was repealed by the act of May 2, 1839, (*Laws of* 1839, *p.* 292,) and a substitute adopted, differing from it in various particulars, and among others allowing the chancellor to prescribe the manner of proceeding, both as to the awarding and trying issues and as to the manner of proceeding to obtain a new trial of the issues, when necessary. Under this act the 69th chancery rule was modified, so as to prescribe the form of settling and trying issues; but the mode of granting new trials was left as it was before the act of 1838. Such was the practice until the new organization of the courts, and the adoption of the code of procedure.

We have now no separate court of chancery to order issues to be tried, but all actions in the supreme court are reduced to a single form. The distinction between the remedies in law and equity is abolished. The special term is held by one of the judges by whom a general term is held, and the judge who orders an issue to be tried to inform the conscience of the court, in a disputed matter depending before him, may not be the presiding judge in that court when the verdict of the jury is brought in. The judge who presides at the trial of the issue, and the judge who presides in special term are of co-ordinate powers. An ap-

Snell v. Loucks.

peal from one to the other is not contemplated by the code. It would be inconvenient in practice, and lead to no satisfactory results.

As the practice in this respect is not provided for in the code, and we are left in perfect freedom, under the general powers of the court, to adopt that which is the most convenient, we shall consult the interest of suitors, by requiring that motions for a new trial of an issue, directed by a special term or general term, be made, by the party dissatisfied with the decision, directly to the general term, upon a case settled according to the course and practice of the court in other trials. Such case, if made to set aside the verdict for an error in matters of law, should contain no more of the evidence than is necessary to raise the question. If made because the verdict was against evidence, it should contain all the evidence given on the trial, or so much thereof as is material.

The paper presented in this case is called a bill of exceptions. It however contains all the evidence given on the trial of the issue, and the rulings of the presiding judge. It was settled on notice to the opposite party, whose amendments were before me at the time, and it was a proper case for the consideration of the court in general term. It is not regularly before us as an appeal, and must therefore be struck from the calendar, but without costs and without prejudice. It may be treated as a case, in the subsequent stages of the cause, and may be noticed by either party for a hearing at any subsequent term of the court. And there must be an order to stay proceedings on the judgment until the further order of the court. The notice of appeal may be stricken out of the papers.

Motion to strike cause from calendar granted, without costs, and without prejudice. Bill of exceptions converted into a case, and either party allowed to notice it for hearing. Proceedings on judgment stayed in the mean time till the further order of the court.

[SARATOGA GENERAL TERM, January 5, 1852. *Willard, Hand, Cady* and *C. L. Allen,* Justices.]